IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | **Criminal No. 3:15-cr-032-HEH-2** |
| | ) | |
| LAURA SORENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The parties stipulate that the allegations in Counts One and Two of the pending Criminal Indictment and the following facts are true and correct and that had the matter gone to trial, the United States could have proven each of them beyond a reasonable doubt. All of the events described herein occurred in the Eastern District of Virginia and elsewhere within the jurisdiction of this court.

1. From on or about December 19, 2014, through on or about January 6, 2015, the defendants, ALDAIR HODZA and LAURA SORENSEN, did knowingly recruit, entice, harbor, transport, provide, obtain and maintain a person, to wit: J.B., in and affecting interstate and foreign commerce, and did aid and abet each other in doing so, knowing and in reckless disregard of the fact that force, threats of force, fraud, and coercion would be used to cause J.B. to engage in a commercial sex act as set forth in Count One of the Indictment in violation of Title 18, United States Code, Sections 1591(a) and 2; and from on or about December 19, 2014, through on or about January 6, 2015, the defendants, ALDAIR HODZA and LAURA SORENSEN, did knowingly transport an individual, to wit: J.B., in interstate and foreign commerce, and did aid and abet each other in doing so, with the intent that J.B. engage in

1

prostitution and sexual activity for which any person can be charged with a criminal offense as set forth in Count Two of the Criminal Indictment in violation of Title 18, United States Code, Sections 2421 and 2.

2. Prior to December 19, 2014, the defendants entered into an agreement with one another to approach the victim, J.B., to get her to come to their recreational vehicle (hereafter, R.V.). On December 19, 2014, SORENSEN drove to J.B.'s home and asked her if she wanted to hang out and play cards with the defendants and SORENSEN's younger sister in the R.V. SORENSEN's younger sister and J.B. have been friends since kindergarten.

3. J.B. agreed to accompany SORENSEN back to the R.V. where HODZA was waiting. Once in the R.V., J.B. realized that SORENSEN's younger sister was not present. HODZA and SORENSEN told J.B. that no cell phones were allowed in the "home," and took J.B.'s phone away from her. At some point the defendants advised J.B. that she was going to be punished by SORENSEN and HODZA. J.B. was then forced by the pair to consume alcohol and smoke marijuana. Shortly thereafter, J.B. was sexually assaulted by both HODZA and SORENSEN.

4. After telling J.B. that she was no longer free to leave, HODZA and SORENSEN instructed J.B. to refer to them as "Master" and "Mistress." They later instructed J.B. to refer to them as "Enforcer" and "Handler." J.B. was told that she would be required to engage in sex for money, and HODZA and SORENSEN began referring to J.B. as "Aurora."

5. SORENSEN took explicit photographs of J.B., which she posted on Craigslist using SORENSEN's cell phone. Through text messages and phone calls, HODZA and SORENSEN made arrangements for J.B. to meet with men in Iowa and engage in sexual acts for money.

6. Between December 19, 2014 and December 24, 2014, HODZA drove SORENSEN and J.B. to various locations in Iowa to meet with men who had responded to the ads posted by

SORENSEN. SORENSEN was in charge of negotiating the fees for various sex acts, and remained in the room with the men and J.B. while J.B. performed the sex acts. SORENSEN always collected and kept all of the money that J.B. earned for the sex acts.

7. While J.B. was being held captive in the R.V. in Iowa, a dog belonging to SORENSEN and HODZA attacked their cat. In response, HODZA slit the dog's throat and threw the dog out of the R.V. where it lay dying. The next morning, the dog was still alive but whimpering. The dog was brought back into the R.V., and HODZA and SORENSEN subsequently obtained a firearm from a relative of SORENSEN's. HODZA then shot the dog and put it in a burn pile in the back of the residence where the R.V. was parked.

8. On December 24, 2014, SORENSEN drove J.B. to her father's nearby residence to pick up Christmas presents for J.B's family. SORENSEN remained with J.B. the entire time they were inside the residence. J.B.'s father was never told that J.B. was going to be brought to Virginia. Other than colored pencils, a sketch book, and a journal, J.B. did not bring any other personal items.

9. SORENSEN returned with J.B. to the R.V. where HODZA was waiting. Upon their arrival, HODZA drove the three to a bar owned by J.B.'s mother's boyfriend. Prior to entering the bar, SORENSEN instructed J.B. to tell her mother that J.B. was leaving town with HODZA and SORENSEN voluntarily, and that J.B. would be working as their nanny and housekeeper during the trip to Virginia. SORENSEN further advised J.B. that she had knives on her person, and that she would kill J.B., her mother, and her mother's boyfriend if J.B. did not comply with her instructions. SORENSEN then accompanied J.B. into the bar.

10. When J.B.'s mother was told that J.B. was leaving with HODZA and SORENSEN, J.B's mother told J.B. and SORENSEN to get J.B's "things" out of the R.V because J.B. was not

going on the trip to Virginia. During this exchange, J.B. stood quietly and cried. SORENSEN escorted J.B. back to the R.V., and she and HODZA quickly drove away from the area.

11. Upon realizing that J.B. was not coming back into the bar, J.B.'s mother got into her vehicle and chased after the R.V. Shortly thereafter, she caught up to the R.V. and ran it off the road. Police were then called to the scene by J.B.'s mother.

12. Prior to the arrival of the police, J.B. was told by the defendants that she was to tell the police that she was an adult and that she wanted to leave Iowa with HODZA and SORENSEN. J.B. complied.

13. Between December 24, 2014, and December 27, 2014, the three traveled from Iowa to Virginia Beach, Virginia. During that time, SORENSEN continued to post advertisements on Craigslist in which she solicited J.B. for prostitution. At SORENSEN and HODZA's direction, J.B. also solicited men to pay her for sexual acts at truck stops during the trip to Virginia.

14. On December 28, 2014, the three arrived in Virginia Beach and picked up HODZA's eight-year-old daughter. The defendants told the child that J.B.'s name was "Aurora." The four then went to the North Landing Campground in Virginia Beach, Virginia where they stayed until December 30, 2014. They then traveled to Knotts Island, North Carolina, on December 30, 2014, and stayed at the Sandy Point camp ground until January 4, 2015.

15. Between December 27, 2014, and January 6, 2015, HODZA and SORENSEN continued to prostitute J.B. Craigslist ads were posted in the Tidewater, Virginia area using email addresses belonging to SORENSEN. SORENSEN used her cell phone to communicate with men and arrange for them to meet with J.B. SORENSEN arranged for men to come to the R.V. and collected the money. J.B. would then perform sexual acts on these men in the R.V. On at least one occasion, a male responded to an ad posted by SORENSEN, came to the R.V. and engaged

4

in a sexual act with J.B. for money while HODZA's minor child was in the back room of the R.V.

16. During the time she was being held captive in Virginia Beach, Virginia, North Carolina, and New Kent County, Virginia, J.B. was tortured, beaten, and sexually abused by both HODZA and SORENSEN. The following are examples of some but not all of the torture and injuries that J.B. suffered at the hands of the defendants:

- J.B. was "hog-tied" and severely burned on her back and abdomen with a key and scissors that had been heated on the stove top.

- J.B. was repeatedly whipped with a rope.

- A dog collar and leash were forced onto J.B. and she was ordered to jump from the R.V. onto a gravel path.

- J.B. was dragged to the water at the camp ground while tied with a dog leash and collar.

- J.B. had knives thrown at her, nails driven through her feet, and nails run down her legs to the point of drawing blood.

- Cigarettes were put out on J.B.'s back, chest, and placed into parts of her body while still lit.

- J.B. was kicked repeatedly by her captors to the point where the skin from her mid leg to upper abdomen was blackened and bruised.

- J.B's captors threatened to smash J.B.'s toes with a hammer.

- J.B.'s captors sprayed bleach into J.B.'s wounds.

- J.B. was not given food to eat or water to drink, and was subject to numerous additional acts of mental and physical humiliation including repeated and explicit threats of death.

17. The parties stipulate and agree that HODZA and SORENSEN engaged in a number of violent acts while HODZA's daughter was present in the R.V., and that HODZA's daughter

witnessed aspects of the beatings, torture, and humiliation by the defendants against J.B.

18. The defendants, ALDAIR HODZA and LAURA SORENSEN each actively participated in the criminal venture set forth in Counts One and Two of the Criminal Indictment, and aided and abetted one another in the commission of these crimes, with full knowledge of the circumstances constituting the charged offenses.

19. The defendants, ALDAIR HODZA and LAURA SORENSEN did commit the acts set forth in Counts One and Two of the pending Criminal Indictment, and they did so knowingly, intentionally, and unlawfully, without legal justification or excuse, and with the specific intent to do that which the law forbids, and not by mistake, accident or any other reason.

I have consulted with my attorney regarding this Statement of Facts. I knowingly and voluntarily agree that each of the above-recited facts is true and correct and that had this matter gone to trial the United States could have proven each one beyond a reasonable doubt.

5-1-15
Date

Laura
Laura Sorensen
Defendant

We are counsel for the defendant, Laura Sorensen. We have carefully reviewed this Statement of Facts with her and, to our knowledge, her decision to agree to this Statement of Facts is an informed and voluntary decision.

5/1/15
Date

Mary E. Maguire, Esq.
Nia A. Vidal, Esq.
Counsel for Laura Sorensen

|  |  | DANA J. BOENTE |
|  |  | UNITED STATES ATTORNEY |

May 1, 2015                By: /s/ Angela Mastandrea-Miller
Date                           Angela Mastandrea-Miller
                               Heather L. Hart
                               Dominick S. Gerace
                               Assistant United States Attorneys